UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACK LANKFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-03935-JMS-TAB |
| | ) |
| PAUL TALBOT Dr., individually and | ) |
| professionally as the P.C.F. Dr., | ) |
| WEXFORD OF INDIANA LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

In this prisoner civil rights action, Plaintiff Jack Lankford asserts claims against Dr. Paul Talbot and Wexford of Indiana, LLC. Wexford is a private entity that contracts to provide medical care to inmates at Pendleton Correctional Facility (PCF). Wexford employed Dr. Talbot to treat PCF inmates.

Mr. Lankford alleges that he has been experiencing dizzy spells and ringing in his ears since March 2018 that he believes indicates stenosis in his carotid artery. Mr. Lankford underwent surgery in 2012 for stenosis in his left carotid artery, although both arteries showed high amounts of blockage. Recently, Mr. Lankford has been experiencing headaches and nausea. Mr. Lankford has asked that the medical providers at PCF refer him to an outside specialist for a scan to determine whether he has stenosis that requires treatment, but they have declined to do so. Mr. Lankford now requests that the Court order for him to be examined by an outside specialist pursuant to Federal Rules of Civil Procedure Rule 35. Given the content of his motion, dkt. [47], the Court treats it as a motion for preliminary injunctive relief.

1

## I. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "To obtain a preliminary injunction, a plaintiff must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citation and quotation marks omitted); *see Winter*, 555 U.S. at 20. "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors*, 922 F.3d at 364 (citation and quotation marks omitted).

If the plaintiff passes the threshold requirements, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018). The Seventh Circuit "'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364 (quoting *Planned Parenthood*, 896 F.3d at 816).

Because Mr. Lankford is a prisoner, the Prison Litigation Reform Act (PLRA) "circumscribes the scope of the court's authority to enter an injunction" in this case. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). "This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the

institutions they manage.'" *Westefer*, 682 F.3d at 683 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

## II. Background

On January 12, 2012, a physician evaluated Mr. Lankford and discovered through an ultrasound that Mr. Lankford had a right internal carotid artery (ICA) stenosis of 50% to 59%, and a left ICA stenosis of 70% to 99%. Dkt. 47 at 6. One of the symptoms Mr. Lankford had complained of was exercise-induced dizziness. *Id.* The doctor determined that a carotid endarterectomy patch angioplasty was necessary for the left ICA, and Mr. Lankford received surgery. *Id.*

In March 2018, Mr. Lankford began experiencing dizzy spells and ringing in his ears. He submitted several health care request forms expressing concern about the dizziness. Dkt. 47-5 (April 18, 2018 request form); dkt. 47-4 (May 15, 2018 request form); and dkts. 47-1, 47-2, 47-3 (May 17, 2019 request form). Mr. Lankford's May 17, 2019, request form indicated specifically that he had been requesting a referral to an outside specialist to obtain a scan to check his carotid arteries. He noted that he received surgery on one artery, but "they also learned that the other side was clogged up but not bad enough to have surgery but Dr. did tell me to make sure I stay on top of it so it don't clog to the danger point—I was sent out 1 time since my surgery to have both [arteries] checked." Dkt. 47-2 (errors in original). He stated that he had asked Dr. Talbot several times to refer him to a specialist for a scan but believed Dr. Talbot avoided doing so to save Wexford money. *Id.* He also noted that Dr. Talbot never wrote down anything about these concerns, to the point that Mr. Lankford felt he needed the escort guards to listen to his appointments to corroborate that he had expressed these concerns to Dr. Talbot. *Id.*

3

Mr. Lankford supplemented his complaint to add that he had been experiencing sudden headaches and nausea beginning around January 2020. Dkt. 47 at 1–2; dkt. 40.

Mr. Lankford asks the Court to order Wexford to arrange for his examination and appropriate scan by a specialist outside the prison. Dkt. 47 at 1–3.

### III. Analysis

Mr. Lankford's medical record and healthcare request forms show that he has a medical history and ongoing symptoms that warrant a referral to an outside specialist for appropriate diagnostic scanning and potential treatment.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotations omitted). A prisoner may show deliberate indifference by establishing that his medical providers have chosen "an 'easier and less efficacious treatment' without exercising professional judgment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *see also Petties*, 836 F.3d at 730 (noting that a medical provider may be deliberately indifferent by causing "an inexplicable delay in treatment which serves no penological interest").

Mr. Lankford appears well-equipped to establish deliberate indifference. He has a documented history of a serious medical condition that required surgery. Dizziness was the only symptom Mr. Lankford complained of prior to his 2012 surgery, dkt. 47 at 6, and it is one of his chief symptoms now. Mr. Lankford is 69 years old and diabetic. Dkt. 47 at 6. Dizziness and severe headaches are symptoms of carotid artery disease, and age and diabetes are both risk factors. *See* Mayo Clinic, *Carotid Artery Disease*, available at https://www.mayoclinic.org/diseases-conditions/carotid-artery-disease/symptoms-causes/syc-20360519 (last visited May 4, 2020). Yet Dr. Talbot and other medical providers at PCF have disregarded Mr. Lankford's concerns and have not referred Mr. Lankford to a specialist for any diagnostic scan. This is evidence that Wexford's medical staff at PCF has opted for an easier treatment—or no treatment at all—without exercising professional judgment, and the defendants have not asserted any penological interest to justify denying Mr. Lankford access to appropriate diagnostic scans.

The Court finds at this stage that Mr. Lankford is likely to suffer irreparable harm if he has stenosis that remains untreated. Blocked carotid arteries may cause strokes, which can be fatal or cause permanent brain damage. *See*, *Carotid Artery Disease*, *supra*.

The defendants have not asserted any reason they or the public interest would be harmed by arranging for Mr. Lankford's examination and treatment by an outside physician. The Court finds that any harm to the defendants is likely to be minimal compared to the harm Mr. Lankford

5

is likely to endure if his condition remains untreated. Additionally, "upholding constitutional rights serves an important public interest." *Planned Parenthood*, 896 F.3d at 833. The evidence indicates that Mr. Lankford has a serious medical condition that must eventually be treated. Ordering Wexford to immediately arrange his treatment by an appropriate outside physician merely expedites the process by which Wexford must ultimately satisfy its obligation to care for Mr. Lankford and saves the public any expense associated with delaying treatment or persisting with unnecessary or ineffective interim measures.

Mr. Lankford was previously treated at a vascular surgery clinic. *See* dkt. 47 at 6. The Court finds that an appropriate and narrowly drawn injunction would simply require Wexford to refer Mr. Lankford to a specialist who could provide an appropriate diagnostic scan (e.g. an ultrasound, CT, or MRI) and then adopt and implement the treatment plan recommended by the specialist. Such an order does not require any defendant or member of the Wexford medical staff to render specific or unnecessary treatment. Rather, it simply requires Wexford to timely facilitate appropriate treatment for Mr. Lankford's condition.

## IV. Conclusion and Further Proceeding

Mr. Lankford's motion for physical examination, dkt. [47], construed by the Court as a motion for preliminary injunctive relief, is **granted** consistent with the following:

- Defendant Wexford of Indiana, LLC, shall have **through May 18, 2020**, to file notice that it has scheduled an appointment for Mr. Lankford to be examined by an appropriate specialist. Wexford may file this notice *ex parte* to avoid giving Mr. Lankford advance notice of the date and location of his examination.

- Wexford shall provide the specialist with a copy of this Order.

- Within **seven days** following the examination, Wexford shall file notice that it has arranged for Mr. Lankford to receive the treatment recommended by the specialist.

- This preliminary injunction shall automatically expire on **August 4, 2020**. If Mr. Lankford wishes to renew the preliminary injunction, he shall file a motion for renewal no later than **July 21, 2020**.

**IT IS SO ORDERED.**

Date: 5/5/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JACK LANKFORD
854170
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Angela Marie Rinehart
KATZ KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com