UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACK LANKFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-03935-JMS-TAB |
| | ) |
| PAUL TALBOT Dr., individually and | ) |
| professionally as the P.C.F. Dr., | ) |
| WEXFORD OF INDIANA LLC, | ) |
| | ) |
| Defendants. | ) |

**Order Denying Motion to Reinstate Preliminary Injunction**

On May 5, 2020, the Court granted plaintiff Jack Lankford's motion for preliminary injunction. Dkts. 57, 58. The injunction required the defendants to schedule Mr. Lankford to be examined by an appropriate specialist who could provide an appropriate diagnostic scan to determine whether Mr. Lankford is suffering from carotid artery disease and then to arrange for Mr. Lankford to receive the treatment recommended by the specialist. Dkt. 58 at 1.

Mr. Lankford has been seen by two specialists and has received two scans that show disparate results. Mr. Lankford has filed a motion to reinstate and enforce the preliminary injunction, dkt. [80], asking that the Court order an additional surgical opinion and treatment based on that opinion.

**I.    Background**

Mr. Lankford, a 69-year-old inmate at Pendleton Correctional Facility ("PCF"), has a history of carotid artery stenosis, high blood pressure, diabetes, and diabetic neuropathy. In 2012, Mr. Lankford underwent an endarterectomy to remove plaque from his right internal carotid artery. The vascular surgeon noted that there was stenosis in Mr. Lankford's left carotid artery which

1

Mr. Lankford should monitor, although surgery was deemed unnecessary at the time. In March 2018, Mr. Lankford began experiencing dizzy spells and ringing in his ears and advised Dr. Talbot that he was concerned that he may need treatment for carotid artery disease. Dr. Talbot dismissed those concerns, and Mr. Lankford filed the motion for preliminary injunction seeking referral to an outside specialist. Dkt. 47. The Court found that Mr. Lankford had demonstrated a likelihood of success on the merits that his healthcare providers were demonstrating deliberate indifference, granting his motion for a preliminary injunction. Dkt. 57.

The preliminary injunction required Wexford "to refer Mr. Lankford to a specialist who can provide an appropriate diagnostic scan … and then adopt and implement the treatment plan recommended by the specialist." Dkt. 58 at 3. The following is a summary of Mr. Lankford's treatment since issuance of the injunction:

- On May 21, 2020, Mr. Lankford underwent Doppler imaging at Meridian Radiology, which revealed "*severe stenosis right carotid bulb and origin ICA 90% planimetry*." Dkt. 80-1 (emphasis added). As a result, Dr. Richard Mitcheff, Wexford's Regional Medical Director, instructed staff to schedule Mr. Lankford for an "immediate referral to vascular surgery for likely carotid endarterectomy." Dkt. 82-1 at 1. Mr. Lankford was also ordered to receive anticoagulants. *Id.*

- On August 20, 2020, Mr. Lankford was seen by neurologist Dr. Marc Cohen. Based on the Doppler imaging, Dr. Cohen found "occlusion and stenosis of right carotid artery" and determined vascular surgery was appropriate. Dkt. 80-2 at 4. He referred him to vascular surgeon Dr. Richard Chitwood. *Id.*

- On September 22, 2020, Mr. Lankford was seen by Dr. Chitwood who recorded in his office visit notes that Mr. Lankford had recently suffered headaches,

    lightheadedness, and a couple bouts of syncope (fainting). Dkt. 80-3 at 3. Mr. Lankford did not report symptoms of hemispheric transient ischemic attack, stroke, or transient blindness in one eye (*amaurosis fugax*). *Id.* Dr. Chitwood also reviewed the imaging from Meridian Radiology showing the 90% stenosis in his right carotid artery. Dr. Chitwood listened to Mr. Lankford's arteries and detected bruits—"whooshing" sounds of turbulent blood flow indicative of carotid artery disease[1]—and determined that his "[blood] flow velocities are not suggestive of such a severe stenosis." *Id.* at 4. Dr. Chitwood concluded that Mr. Lankford had "asymptomatic carotid stenosis" and decided further imaging was warranted. *Id.* He also confirmed the continuation of Mr. Lankford's regimen of daily aspirin and Lipitor, a statin.

- On October 27, 2020, Mr. Lankford underwent additional Doppler imaging at Ascension Medical Group, Dr. Chitwood's medical practice group. That imaging showed the *right vertebral artery was occluded,* a *60–79 % stenosis in the left ICA, and 0–59% stenosis in the right ICA*. Dkt. 80-4 (emphasis added). Based on these results, Dr. Chitwood determined that the appropriate course of treatment was to maintain Mr. Lankford's aspirin and statin regimen and have a follow-up appointment in six months. Dkt. 80-5.

The preliminary injunction expired by its terms on August 4, 2020; Mr. Lankford had through July 21, 2020, to file a motion for renewal, dkt. 58 at 2, which he did not do. However, on

---

[1] Cleveland Clinic, *Carotid Artery Disease (Carotid Artery Stenosis): Diagnosis and Tests*, https://my.clevelandclinic.org/health/diseases/16845-carotid-artery-disease-carotid-artery-stenosis/diagnosis-and-tests (last visited Dec. 29, 2020).

account of delays caused by the COVID-19 pandemic, Mr. Lankford had not yet seen a specialist at the time of the injunction's expiration.

## II. Discussion

### A. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "To obtain a preliminary injunction, a plaintiff must establish that [he] has some likelihood of success on the merits; that [he] has no adequate remedy at law; that without relief [he] will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citation and quotation marks omitted); *see Winter*, 555 U.S. at 20. "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors*, 922 F.3d at 364 (citation and quotation marks omitted).

If the plaintiff passes the threshold requirements, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018). The Seventh Circuit "'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in [his] favor." *GEFT Outdoors*, 922 F.3d at 364 (quoting *Planned Parenthood*, 896 F.3d at 816).

### B. Analysis

Mr. Lankford seeks reinstatement of the preliminary injunction and a referral to another vascular surgeon not associated with Dr. Chitwood or Ascension Medical Group for a second opinion on whether vascular surgery is immediately warranted.

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). A prisoner may show deliberate indifference by establishing that his medical providers have chosen "an 'easier and less efficacious treatment' without exercising professional judgment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)). The defendants do not dispute that carotid artery stenosis is a serious medical condition. Rather, the issue is whether Dr. Chitwood's treatment plan disregards a risk of substantial harm that Mr. Lankford will suffer a stroke absent surgery.

Mr. Lankford has been seen by two specialists who had different recommendations based on incongruent imaging results: Dr. Cohen recommended vascular surgery[2] based on Meridian Radiology's imaging that showed 90% stenosis in the right carotid artery, while Dr. Chitwood recommended medication and a six-month follow-up appointment based on his physical examination of Mr. Lankford and Ascension Medical Group's imaging that showed 0–59% stenosis in the right artery and 60–79% stenosis in the left artery. The parties agree that surgery is

---

[2] The defendants argue that Dr. Cohen's recommendation was solely a referral to Dr. Chitwood. But the Court agrees with Mr. Lankford's interpretation of Dr. Cohen's notes that his recommendation was for surgery and that Dr. Cohen would effectuate that plan by referring Mr. Lankford to Dr. Chitwood, a vascular surgeon. *See* dkt. 80-2 at 4 ("He need avasculat surgery [sic]").

typically advised for patients with carotid narrowing by 70% or more who are symptomatic. *See* dkt. 80 at 6[3] and dkt. 82 at 7, n.3.[4]

Mr. Lankford argues that Dr. Chitwood's "wait-and-see" attitude ignores Mr. Lankford's risk of a potentially fatal stroke and evinces an "easier and less efficacious treatment," *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976), in violation of the Eighth Amendment. He asserts that Dr. Chitwood (1) erroneously concluded that Mr. Lankford was asymptomatic by ignoring his symptoms of dizziness and headaches, (2) failed to address treatment of the occluded right vertebral artery, and (3) failed to reconcile the different imaging results.

The defendants argue that they have fully complied with the injunction. That is, they have provided Mr. Lankford with two sets of imaging and consultations with two specialists, and they are following the second specialist's recommended treatment plan based on his interpretation of the more recent imaging. They argue that Mr. Lankford's disagreement with Dr. Chitwood's conservative treatment plan is really an attempt to dictate his treatment, which he cannot do. *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

"Failure to follow instructions received from outside experts can amount to deliberate indifference." *Id.* But courts must be cautious not to "embroil themselves in … scientific controversies beyond their expertise." *Glossip v. Gross*, 576 U.S. 863, 882 (2015) (internal quotation marks and citation omitted). Disagreement between doctors alone is insufficient to establish an Eighth Amendment violation. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). And "federal courts will not interfere with a doctor's decision to pursue a particular course of treatment

---

[3] Citing John Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/carotid-artery-disease (last visited Dec. 29, 2020).

[4] Citing José Biller, M.D., William H. Thies, Ph.D., *When to Operate in Carotid Artery Disease*, American Family Physician, 2000 Jan 15;61(2); 400–06, *available at* https://www.aafp.org/afp/2000/0115/p400.html.

unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.*

Based on the Court's review of the medical records and the independent scientific materials provided by both parties, Dr. Chitwood's treatment plan does not reflect a significant departure from accepted professional standards. He concluded that medication and a six-month follow-up appointment was an appropriate course of treatment based on Mr. Lankford's reported symptoms and Dr. Chitwood's office's imaging results. Dkts. 80-3, 80-5. Dr. Chitwood's notes show he is aware of Mr. Lankford's dizziness and headaches; that these symptoms do not indicate that surgery is immediately necessary is a medical decision that cannot be questioned by this Court.[5] *Pyles*, 771 F.3d at 409. Although Mr. Lankford expresses concern that Dr. Chitwood has failed to treat his occluded right vertebral artery, his cited medical research indicates that prescribing medication is within the standard of care.[6] Finally, the Court shares Mr. Lankford's frustration that there is no medical explanation for the disparate imaging results in the record. But the Ascension Group imaging is consistent with Dr. Chitwood's physical examination of Mr. Lankford, in which he found that Mr. Lankford's "flow velocities are not suggestive of such a severe [90%] stenosis." Dkt. 80-3 at 4.

---

[5] Dr. Chitwood's distinguishing of Mr. Lankford's symptoms with more severe symptoms appears consistent with medical literature. *See, e.g.,* Karl Oestreich, Mayo Clinic News Network (June 10, 2009), *Treatment options should be carefully considered for blocked carotid arteries*, https://newsnetwork.mayoclinic.org/discussion/treatment-options-should-be-carefully-considered-for-blocked-carotid-arteries/ ("Symptoms of carotid artery stenosis include transient blindness in one eye, weakness or numbness of an arm, leg, or the face, or the temporary inability to speak or to understand conversation" while dizziness or generalized weakness "are not considered symptoms of carotid artery stenosis even when imaging shows a blockage is present.").

[6] *See* dkt. 80 at 3, n.6, *citing* U.C. Davis Health, *Vertebrobasilar insufficiency: Treatment for vertebrobasilar insufficiency*, https://health.ucdavis.edu/vascular/diseases/vertebrobasilar.html (last visited Dec. 29, 2020) (describing medication as a treatment option).

When the Court granted Mr. Lankford's motion for preliminary injunction, it was on the basis that Dr. Talbot refused to consider that Mr. Lankford's symptoms were indicative of carotid artery disease and therefore refused to refer him to a specialist for imaging and possible treatment. Mr. Lankford's imaging confirms that he has carotid artery disease, and the defendants are implementing Dr. Chitwood's treatment plan, consisting of medication and further monitoring. The defendants have complied with the Court's injunction, and Mr. Lankford has not demonstrated a likelihood of success on the merits that Dr. Chitwood's conservative approach evinces a reckless disregard for risk of stroke. Accordingly, Mr. Lankford's motion to reinstate his preliminary injunction, dkt. [80], is **denied**.

### III. Conclusion

The defendants have complied with the Court's order by (1) conducting diagnostic imaging and (2) implementing a treatment plan recommended by vascular surgeon Dr. Chitwood. Because Mr. Lankford has failed to show that the defendants are disregarding a substantial risk of serious harm, his motion to reinstate his preliminary injunction, dkt. [80], is **denied**.

**IT IS SO ORDERED.**

Date: 12/29/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JACK LANKFORD
854170
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jan M. Carroll
BARNES & THORNBURG, LLP (Indianapolis)
jan.carroll@btlaw.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com